**STATE, Plaintiff-Appellee, v. BUTLER et, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

Nos. 4342, 4343, 4344. Decided November 15, 1949.

Ralph J. Bartlett, Pros. Atty., George T. Tarbutton, Asst. Pros. Atty., Columbus, for plaintiff-appellee.

Ray E. Hughes, H. Alfred Glascor, Columbus, for defendants-appellants, William W. Butler and Charles C. McCurry.

John M. Scott, Columbus, for defendant-appellant, William G. Noble.

**OPINION**

By HORNBECK, J.

The defendants were indicted separately, tried jointly, convicted and sentenced on a verdict of guilt on two counts of the indictments against them. The charges were burglary and larceny, and forcible entrance into a vault. Each defendant appeals and in a joint brief filed in their behalf fourteen errors are assigned.

We shall not attempt to consider these errors categorically but will be content to discuss the more material questions raised.

The convictions in this case are as to certain material elements of the offenses charged based upon circumstantial evidence and it is urged that the Court did not fully and properly charge the jury on that subject in its application to the facts developed.

The Court carefully instructed the jury as to the presumption of innocence with which the defendants were clothed, read to its members the definition of reasonable doubt taken from the Code, and upon the subject of circumstantial evidence said:

"Now evidence may be either direct or circumstantial or both. If a witness testifies from his personal knowledge as to the commission of an act, that is called direct or positive evidence, or if he testifies directly to something that he has seen or heard, that is called direct evidence, provided the evidence is material to be proven in the case. But it is not always possible to ascertain the truth in a case by evidence of this character, that is, by direct or positive evidence. Hence, the law permits the introduction of what is called in the law circumstantial evidence. And by circumstantial evidence is meant the proof of certain facts and circumstances in a given case from which a jury may reasonably and logically and directly infer other connected facts and circumstances which usually and reasonably follow, according to the common experiences of mankind. I charge you that in making inferences from facts you may not make an inference upon an inference, but you may draw any direct inferences which logically flow from the proof of the facts. The credibility

of the witness detailing the circumstantial evidence, or the weight of such circumstances, if the jury finds that they occurred, are to be determined solely by you. But, in order to warrant a conviction of a criminal offense upon circumstantial evidence, or by any evidence, it is necessary that the evidence should be so clear and convincing as to exclude every reasonable doubt; and in order to warrant a conviction upon circumstantial evidence alone, the facts and circumstances must be such as to exclude every other reasonable hypothesis, but the single one of the defendant's guilt."

To this language of the charge no exception was noted, nor was any request made to charge otherwise.

The language of the charge follows the cases and particularly **Carter v State, 4 Oh Ap 193.** In our judgment it is a clear, concise and complete charge on circumstantial evidence with application to the facts as developed in this case and fully protects all of the rights of the defendants both as to the quantum and the nature of circumstantial evidence required to support a conviction.

What we say concerning the correctness of this particular part of the general charge may be given application to the charge in its entirety. We find no failure to protect the rights of the defendants in any part of the general charge, nor can we find that the Court prejudiced the cause of defendants in failing to give the special charge requested by defendants.

We find no support for the claims that the verdict was rendered under influence of passion and prejudice, or that the prosecuting attorney was chargeable with misconduct in argument to the jury. In one instance he stepped beyond the bounds of propriety but the trial judge promptly admonished the jury to disregard the objectionable statement. The development in the testimony of the witness, Tom Sawyer, Sergeant of Police, respecting former incarceration of Noble and McCurry in a penitentiary was unfortunate and especially so in view of the fact that counsel for defendants had taken early precaution to avoid the testimony reaching the ears of the jury. However, the trial judge promptly took all measures within his power to remove the effect of the objectionable language from the consideration of the jury and the prosecutor acceded graciously to this ruling. We assume that the jury observed the admonition of the court and therefore hold that the statement and the occurrences incident thereto were not prejudicial to defendants and would not require a reversal of the judgments.

The court committed no error in refusing separate trials to the defendants or in the admission of any of the evidence offered and received on behalf of the State of Ohio and in overruling the motions of defendants to strike out questions and answers pertaining to purported conversations by plaintiff's witnesses with defendants Noble and McCurry.

There are two questions in this case of substance:

(1) Are the verdicts and judgments of guilt supported by any evidence as to all the material elements of the offenses charged,

or

(2) Are they against the manifest weight of the evidence?

We do not propose to restate all of the probative facts developed because counsel for the parties have done so at full length in their briefs. If the evidence was sufficient to carry the question to the jury as to the guilt of the defendants as to each count of the indictment then we would say that it follows that it was sufficient to support the convictions on all counts.

There are certain outstanding facts and circumstances in this case which in our judgment afford proof on every material element of the crimes charged. The most difficult question arising is whether or not there is sufficient proof as to the offenses of burglary and larceny in the particular that the breaking and entering was done in the night season. We will discuss this along with other aspects of the evidence.

It is established beyond any doubt that there was a breaking and entering of the building at 343 North Fourth Street, and a vault in the building and a larcenous taking of property therefrom. It also appeared that the property stolen was morphine and the amount and value thereof were fixed. Likewise, it is undisputed that there was a breaking of the locks on the front door to the building, the gate to the bottom of the stairway leading to the second floor, on the door to the rear elevator, and the hasp on the lock of the compartment in which the morphine was kept, as is the breaking or cutting through of the vault between the janitor's closet and the vault.

That the three defendants were together in Bruceton, Tennessee, in a 1948 Hudson Commodore Club coupe with venetian blinds in the rear, and that they purchased a wheel for the car and a fire extinguisher is testified by two witnesses who made positive identification of all of the defendants. At the time of the purchase Butler did most of the talking but McCurry paid the bill. This Hudson automobile, bearing license No. 1382, with the added license number either 7 or 1, probably

the latter, is traced to a parking lot on Front Street some seven blocks south of the building where the crimes were committed at 343 North Fourth Street, later at the Haft Motel at 9 or 9:30 on the night of December 24, 1948, and, finally, to Hawesville, Kentucky, where it was abandoned on the night of December 25th at about 12 o'clock midnight. McCurry is also identified as being with the Hudson automobile in Tennessee, at the Haft Motel and at Hawesville, Kentucky. The driver and at least one other person, neither identified, were with the Hudson at the parking lot on Front and Town Streets. McCurry admitted to Sgt. Sawyer that he was at the parking lot in Columbus on the 24th of December and the parking ticket for the Hudson from this lot was found in a pocket of the jacket in the vault following the discovery on December 26th of the breaking and entering of the vault.

The superintendent of a grocery store occupying the first floor of the building at 343 North Fourth Street left the building at 4:30 P. M. on December 24, at which time it was not locked. The manager of the Mutual Drug Company on the second floor was at its place of business for some two hours on the afternoon of December 24 and left about 5 P. M., at which time everything was intact. Whether he locked the building does not appear but it was not locked earlier than the time of his departure.

Defendants Noble and McCurry were identified as being at the front door of the building at 343 North Fourth Street. Although McCurry and Noble were not identified at the Haft Motel, the three who registered there were in a Hudson automobile testified to be a 1949 model and it further appeared that there was no material difference in the appearance of the 1948 and 1949 Hudson car. McCurry is partially recognized as being the one of three persons at the Haft Motel who registered and he registered under an assumed name, as is established by a handwriting expert witness. The other two names were not those of the other defendants but may also have been assumed names. The service station proprietor who identified Butler and Noble, and placed them at the door of the Mutual Drug Company, also identified them as having come to his place of business and having placed a long distance telephone call to Dallas, Texas, at which time they requested matches of him and he gave to them a packet of matches carrying his name and an advertisement for his station. A book of matches identical with that which had been given to Butler or Noble was in a pocket in a jacket found in the vault from which the morphine was taken.

The motive for the taking of the morphine is established,

in so far as the defendant Noble is concerned, by his statement to Sgt. Sawyer to the effect that with a $60.00 a day morphine habit he had to be a thief and the further proof that he was an addict appears from the necessity of administering morphine to him every two or three hours in the waking hours during the whole of his trip from Louisiana to Columbus.

There is significance in the proof that at the time the Hudson was wrecked in Kentucky there was found in it punches, chisels and other tools, a paper bag in which there were two chisels, which bag and chisels were shown to have come from the F. & R. Lazarus & Company, Columbus, Ohio, and at the scene of the crimes there was found a bolt cutter with a Lazarus tag on it and identifying the department. from which it came. The articles found in the car and at. the scene of the crimes could have been the same as represented by the itemization upon a cash register throwout or sales slip found in the pocket of the jacket. There was also found in the jacket in the vault sales tax stamps of the amount. of 27c which approximated, at least, the amount of sales tax on the total purchase shown by the slip. In the Hudson when wrecked were also found shirts, the initials upon one of which corresponded with those of William Noble.

Was the jury justified in concluding that the breaking and entering was done in the night season?

Found in the debris where the wall was cut through were two flashlights. This is not conclusive that they were used in the night season because it may have been dark even in the daytime in the janitor's closet and in the vault, but they afforded the defendants the means to operate at night, if necessary. The offenses were committed either after 5 o'clock in the evening of the 24th when Butler and Noble left the service station adjoining the Mutual Drug building and before 9 or 9:30 that night when they arrived at the Haft Motel, or after they left the motel which may have been at any time after 9:30 of the night of the 24th and prior to 9 o'clock Christmas morning when the maid found they were gone and the time when the Hudson left Columbus to reach Hawesville, Kentucky, a distance of some 300 miles, by 12 o'clock midnight. of the 25th. These periods of time included several hours of daylight. The front door of the building of the Mutual Drug Company was not locked until some time after 5 P. M. on the 24th and it must have been locked when entered because the lock on the door was broken. The probability of being observed had they worked in the daytime at the front. of the building would naturally deter defendants from so

operating. They not only had to effectuate an entrance, carry on their activities in the building, which must have taken considerable time, but they had to assure their departure from the scene of the crimes without being observed and apprehended. The jury had the right to apply to the determination of the time when the breaking and entering was committed the common experience of mankind. It was within their province to conclude that the defendants worked under cover of darkness and the facts developed and circumstances surrounding the commission of the offenses were such that it could logically conclude that they did so operate.

The links of the chain of circumstantial evidence taken alone may not be conclusive of the guilt of the defendants, but taken together they make a case which cannot be reconciled upon the hypothesis of innocence. See Haley v State of Texas, 3 A. L. R. 779. For a late case as to inference that may properly be drawn from circumstantial evidence, we refer to **State v. Nevius, 147 Oh St 263.** Finally the jury had the right to consider the fact that no one of the defendants took the stand to explain away any of the incriminating developments against him.

We find no prejudice to the rights of the defendants in the trial of this case in any of the particulars assigned. The judgment will be affirmed.

MILLER, PJ, and WISEMAN, J, concur.

## ON APPLICATION FOR REHEARING

Nos. 4342, 4343, 4344. Decided January 9, 1950.

### OPINION

By THE COURT.

Our rules now make no provision for an application for rehearing and it is only in rare instances that we entertain such applications.

Under our former Rule XI the application should be filed within ten days after the decision. The application here was filed forty days after the decision.

Finally, there is nothing of consequence presented in the application which we did not fully consider heretofore.

The application will not be entertained.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.